**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

JAMES A. JAMERSON,

        Plaintiff,

    v.

UNITED STATES POSTAL SERVICE
et al.,

        Defendants.

Case No. 25 CV 06584

Honorable Sunil R. Harjani

## MEMORANDUM OPINION AND ORDER

James Jamerson worked as a special agent for the Postal Service's Office of Inspector General for over a decade. During that time, he became friends with the postmaster of one of the local post offices. When a coworker accused the postmaster of stealing shoes, the postmaster complained to Jamerson. Around the same time, Jamerson heard from another special agent that the postmaster would be investigated for theft. Jamerson maintains that he never told the postmaster about the investigation. But his office became suspicious and questioned whether he shared any confidential information with the postmaster. Jamerson was placed on leave and eventually notified of his impending termination. OIG charged him with unauthorized disclosure of investigation information, which he formally challenged, but to no avail. OIG removed him from his position and upheld the decision on internal appeal.

Proceeding *pro se*, Jamerson sued OIG, several of its officials, and the postmaster general for alleged procedural errors leading up to his removal, which he claims violated his Fifth Amendment right to due process and other procedural rights under statute and agency policy. His constitutional claim is the only one substantial enough to establish federal question jurisdiction. Still, his sole requests for equitable and declaratory relief make the claim implausible when asserted against the individual Defendants personally. When the claim is advanced against them in their official capacities, which is equivalent to the claim against OIG, the Court finds that the Complaint, liberally construed, sufficiently invokes the Administrative Procedure Act's waiver of sovereign immunity. However, Jamerson's request for review of adverse agency action still cannot proceed. The Civil Service Reform Act is an exclusive regime for federal employees like Jamerson to contest removal. Under Supreme Court and Seventh Circuit precedent, the Court finds that Congress intended to channel Jamerson's challenge to his removal through its scheme, even though it provides him with no administrative and judicial review. The Court cannot

provide an alternative remedy, and the constitutional presentation of his claim does not override the statutory directive. Defendants' motion to dismiss is granted.

## Background

In May 2023, the Postal Service's Office of Inspector General received an anonymous tip that a manager in the Lombard, IL post office stole a pair of shoes. [20] ¶ 10.[1] Jamerson had a personal friendship with Postmaster Tenia Thompson of the Lombard post office. *See id.* at 18. Before learning that OIG opened an investigation into the reported theft, he learned directly from Thompson that she was accused of stealing a pair of shoes. *Id.* ¶ 12. When Mike O'Connor, the special agent assigned to investigate the theft, told him that official action was being taken, Jamerson explained to O'Connor that he gave Thompson a pair of shoes as part of a family discount program, which might account for the reported action. *Id.* ¶¶ 14–15. Upon request, Jamerson submitted a written statement about his connection with Thompson to another special agent, Daniel Cozzi. *Id.* ¶ 39; *see also id.* at 21.

Jamerson maintains that he never told Thompson about the theft investigation, but OIG accused him of discussing the allegation with her after speaking to O'Connor. *Id.* ¶¶ 13, 16–17. Jamerson was placed on leave for nearly a year, which his supervisor decided to do only after Inspector General Tammy Hull allegedly weighed in. *Id.* ¶¶ 22, 27. In August 2024, he received a notice of proposed removal. *Id.* ¶ 18. Through counsel, Jamerson submitted a written response to the charges that presented his side of the story, identified mitigating factors weighing against removal, and provided a written statement by Thompson attesting to her version of the events. *Id.* ¶¶ 17c, 19, 42; *id.* at 16–31. Jamerson also obtained a copy of the statement from the employee who reported the theft and argued that it supported his narrative. *Id.* at 51–56; *see id.* ¶ 31. Nevertheless, OIG removed Jamerson from his position. *Id.* ¶ 20. He then unsuccessfully appealed his termination through the agency's internal process, during which Thompson and Cozzi were interviewed.[2]

Jamerson claims that OIG committed procedural errors during his disciplinary process and violated his Fifth Amendment due process rights by removing him. Along with OIG, Jamerson sues Inspector General Hull; her special agents Cozzi, Ryan Petry, and Matthew Modafferi; and the former and current Postmasters General,

---

[1] For purposes of reviewing this motion to dismiss, the Court accepts as true, as it must, all factual allegations in the Complaint, which includes its attachments and referenced documents. *Esco v. City of Chicago*, 107 F.4th 673, 678 (7th Cir. 2024). All paragraph citations refer to Jamerson's typed allegations attached to his form complaint. *See* [20] at 4, 6–11.

[2] Jamerson attaches to his Complaint excerpts from interviews conducted as part of the "161 hearing," which he describes in his response brief as OIG's internal appeal process. [20] at 57–68; [43] at 10.

Doug Tulino and David Steiner. He alleges that Defendants failed to provide adequate warnings about the effect of his statement before he submitted it to Cozzi, to afford sufficient time to gather evidence for his defense, to interview him and Thompson as a key witness, and to consider all the evidence fairly.

## Legal Standard

The government moves to dismiss the Complaint under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Rule 12(b)(1) tests the sufficiency of the complaint on subject matter jurisdiction. *Ctr. for Dermatology & Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588 (7th Cir. 2014). In contrast, Rule 12(b)(6) tests the sufficiency of the complaint on the plausibility of its claims as determined by its factual matter. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). For both types of motions, the Court accepts as true all factual allegations in the complaint and draws all inferences in favor of the non-moving party. *Ctr. for Dermatology & Skin Cancer*, 770 F.3d at 588; *Esco v. City of Chicago*, 107 F.4th 673, 678 (7th Cir. 2024). The Court also holds a *pro se* plaintiff to less stringent standards and liberally construes his complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

## Discussion

The Court begins with whether Jamerson's due process claim survives dismissal. Then, it addresses the remaining two claims about alleged procedural errors.

### I.     Fifth Amendment Due Process Claim (Count I)

In his Complaint, Jamerson seeks a declaration that his removal violated his Fifth Amendment rights, reinstatement of his OIG position with back pay and benefits, expungement of his removal from employment records, and compensatory damages. Initially, the government construed his Fifth Amendment claim against the individual Defendants as a *Bivens* claim, which may allow a private individual to sue federal employees for damages in limited circumstances. *See Thomas v. Carmichael*, 164 F.4th 1058, 1063 (7th Cir. 2026) (citing *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971)). However, in his response brief, Jamerson renounces his claim for damages and clarifies that he seeks only declaratory and equitable relief. [43] at 1 ("Plaintiff does not seek . . . to obtain damages against individual federal officials."); *id.* at 12 ("Plaintiff can cure any identified deficiencies by clarifying that he seeks only equitable and declaratory relief[.]"). By doing so, Jamerson waives his right to seek damages under this claim. *See United States v. Grusd*, 164 F.4th 635, 638 (7th Cir. 2026) ("Waiver occurs when a party intentionally relinquishes a known right[.]" (citation omitted)). All that remains are his requests for declaratory and equitable relief. Therefore, the Court need not determine whether Jamerson presents an actionable *Bivens* claim.

### A. Individual Defendants Sued in Individual and Official Capacities

Analyzing Jamerson's due process claim as one for only declaratory and equitable relief, the Court considers first whether Jamerson sues the individual Defendants in their personal or official capacities. Jamerson does not specify the capacity in which he sues each Defendant in the Complaint or his brief, so it is unclear which is asserted. To proceed, the Court considers the Complaint in its entirety and looks to the conduct alleged. *Orr v. Shicker*, 147 F.4th 734, 739–40 (7th Cir. 2025).

A personal-capacity suit "focuses on the constitutional torts of an individual official." *Orr*, 147 F.4th at 739 (citation omitted). The plaintiff must show that the individual defendant caused the deprivation of a federal right. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). Upon such a showing, the plaintiff may seek money damages but cannot obtain declaratory and injunctive relief. *Knowlton v. City of Wauwatosa*, 119 F.4th 507, 519 (7th Cir. 2024). In the Complaint, Jamerson does not allege any facts that infer personal involvement by Tulino, Steiner, Petry, or Modafferi. However, he alleges that Hull influenced his supervisor's decision to place him on administrative leave, which contributed to the deprivation of due process. [20] ¶¶ 23–24, 32. He also alleges that Cozzi violated agency policy by compelling him to write a statement without adequate warnings that it may lead to disciplinary action. *Id.* ¶¶ 39–40. But, while he identifies individual actions, none of this involvement "seek[s] to impose personal liability upon" them for these actions. *See Kentucky*, 473 U.S. at 165. Rather, he seeks reinstatement, which only OIG can provide, and a declaration that his removal was unconstitutional, which also can be recovered only from OIG. Jamerson no longer seeks damages, so he cannot state a plausible claim against the individual Defendants in their personal capacities. Accordingly, the personal-capacity claims are dismissed with prejudice, since amendment would be futile.[3] *See Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 519 (7th Cir. 2015).

In contrast, an official-capacity suit alleges that an individual official participated in implementing official conduct by a government entity that is the real party in interest. *Orr*, 147 F.4th at 739. Aside from the few allegations implicating Hull and Cozzi, Jamerson attributes the alleged due process violations to OIG. He asserts that "the Agency" failed to conduct necessary interviews during its

---

[3] The government argues that because Cozzi has not been served, Jamerson did not intend to include him as an individual Defendant. Jamerson has not responded to this argument. Cozzi was not served and has not moved to dismiss, *see* [24], but the claims against him places him in the same position as the other Defendants and can be evaluated in the same way. *See Rosser v. Chrysler Corp.*, 864 F.2d 1299, 1304 (7th Cir. 1988). Because the claims against him are integrally related to the rest of the claims, the Court applies its analysis of the government's motion to dismiss to him, too.

investigation into his misconduct, disregarded exculpatory evidence, and ultimately removed him. [20] ¶¶ 17a, 17d, 20; *see also id.* ¶¶ 38, 41, 43, 45. Indeed, the declaratory and equitable relief he seeks is only recoverable from the individual Defendants in their official capacity, since that equates to recovery from OIG. *Knowlton*, 119 F.4th at 519. Considering the Complaint in its entirety and in light of his revised requests for relief, the Court finds that Jamerson asserts official-capacity claims against the individual Defendants. In this capacity, the Court dismisses the claim against former Postmaster General Tulino, who is automatically substituted by the current postmaster, David Steiner.[4] *See* Fed. R. Civ. P. 25(d).

## B.      Sovereign Immunity

Having determined that Jamerson brings official-capacity claims against the individual Defendants, the Court analyzes those claims in the same way as his claim against OIG. *See Orr*, 147 F.4th at 739 ("In an official-capacity suit, . . . the real party in interest is the entity."). The government argues that OIG cannot be liable because it is entitled to sovereign immunity as part of the federal Government. Jamerson contends that he may proceed on his constitutional claim under Title 28, United States Code, Section 1331, which provides the Court with jurisdiction over "civil actions arising under the Constitution." 28 U.S.C. § 1331.

The Postal Service enjoys sovereign immunity as an agency in the executive branch. *U.S. Postal Serv. v. Konan*, 607 U.S. 391, 395 (2026); *Morgan v. Fed. Bureau of Prisons*, 129 F.4th 1043, 1049 (7th Cir. 2025). To maintain a viable claim against the United States in federal court, a plaintiff needs both "a statute that confers subject matter jurisdiction on the district court" and "a federal law that waives the sovereign immunity of the United States to the cause of action." *Clark v. United States*, 326 F.3d 911, 912 (7th Cir. 2003). The language of the statute waiving sovereign immunity must make it "unmistakably clear" that Congress intended to waive it. *Exxon Mobil Corp. v. Corporación Cimex, S.A. (Cuba)*, 146 S. Ct. 1909, 1918 (2026) (citation omitted). "Failure to satisfy either requirement mandates the dismissal of the plaintiff's claim." *Macklin v. United States*, 300 F.3d 814, 819 (7th Cir. 2002). Here, OIG is part of the Postal Service, so Jamerson needs statutory grounds for both subject matter jurisdiction and waiver of immunity. Although he identifies Section 1331 to satisfy the first requirement, he does not cite a statute that waives sovereign immunity.

Despite his lack of legal authority, Jamerson is a *pro se* litigant who is held to less stringent standards and afforded a more liberal construction of his Complaint. *Erickson*, 551 U.S. at 94. A *pro se* plaintiff need not point to the appropriate statute

---

[4] The Court need not reach the government's qualified immunity defense since the personal-capacity claims are dismissed and it does not apply to official-capacity claims. *Sanville v. McCaughtry*, 266 F.3d 724, 732 (7th Cir. 2001).

or law to raise a claim, so long as he explains how the government violated the law in a way that can support a lawsuit. *Powell v. Village of Lansing*, 2026 WL 1091742, at *2 (N.D. Ill. Apr. 22, 2026) (citing *Tolle v. Carroll Touch, Inc.*, 977 F.2d 1129, 1134 (7th Cir. 1992)); *see also Ortiz v. Downey*, 561 F.3d 664, 670 (7th Cir. 2009) (holding that litigants need not plead legal theories if their factual allegations provide fair notice to the defendants of the necessary elements of their claim). Often, when plaintiffs seek judicial review of agency action for nonmonetary relief, they invoke the Administrative Procedure Act. *See Osterbur v. Ill. E.P.A.*, 2011 WL 4459104, at *3 (C.D. Ill. Sep. 14, 2011). Section 702 of the APA provides a generally applicable basis for reviewing agency action. *Blagojevich v. Gates*, 519 F.3d 370, 372 (7th Cir. 2008) (citing 5 U.S.C. § 702). Relevant here, it waives sovereign immunity "in cases involving constitutional challenges." *Michigan v. U.S. Army Corps of Eng'rs*, 667 F.3d 765, 775 (7th Cir. 2011).

Jamerson describes his desire for review of the executive agency action terminating him, which he asserts violated his rights under the Fifth Amendment. By seeking only declaratory and equitable relief, his claim is substantively a Section 702 claim. Indeed, the government recognizes that this statute could be a basis for his claim, even though they do not contend that it is. *See* [47] at 11. Given his *pro se* status and the liberal construction owed to the Complaint, the Court presumes that Jamerson asserts his claim under Section 702 and, thus, Defendants are not immune from suit.

### C.    The Civil Service Reform Act

Having found that Defendants are not immune, the Court turns to the government's argument that the Postal Reorganization Act and Civil Service Reform Act preclude Jamerson's declaratory and equitable claims. The PRA provides that the CSRA governs postal employees' challenges to adverse employment actions, including removal. 39 U.S.C.§ 1005(a)(1); 5 U.S.C. § 7512(1); *Fuqua v. U.S. Postal Serv.*, 956 F.3d 961, 965–66 (7th Cir. 2020). The CSRA "comprehensively overhauled the civil service system." *Lindahl v. Off. Pers. Mgmt.*, 470 U.S. 768, 773 (1985). It centralized adjudication of disputes arising from adverse personnel actions taken against federal employees "to balance the legitimate interests of various categories of federal employees with the needs of sound and efficient administration." *United States v. Fausto*, 484 U.S. 439, 444–45 (1988). To accomplish that purpose, it prescribed remedies for three main categories of civil service employees. *Id.* at 441 n.1. The relevant category in this case is the excepted service, which the parties agree applies to Jamerson's former OIG position. *See* [20] ¶ 21; [47] at 9; *see also* 5 U.S.C. §§ 2102(a)(1)(A), 2103(a); 39 U.S.C.§ 1001(b); *Mouton-Miller v. Merit Sys. Prot. Bd.*, 985 F.3d 864, 869 (Fed. Cir. 2021) ("All positions in the Postal Service fall within the excepted service."). While the CSRA allows excepted-service employees who meet enumerated preference requirements to appeal agency decisions to the Merit Systems Protection Board and Federal Circuit, it provides no administrative or judicial review for members of the excepted service who do not. *See Fausto*, 484 U.S. 446–47 (citing

6

5 U.S.C. §§ 7511(a)(1)(B), 7513(d), 7703); 5 U.S.C. § 2108(3). Jamerson does not allege whether he meets the preference requirements, but he discloses that he cannot appeal to the MSPB. [20] ¶ 21. Accordingly, the Court infers that he is a non-preference member of the excepted service.

Given his service status, Jamerson cannot appeal to the MSPB or Federal Circuit. The government argues that he cannot bring his claim here, either. Although he alleges a constitutional violation, the government asserts that the CSRA is an exclusive scheme that precludes judicial review beyond what it prescribes. Certainly, Congress can substitute federal courts' statutory or equitable authority for an alternative scheme of review. *Axon Enter., Inc. v. Fed. Trade Comm'n*, 598 U.S. 175, 185 (2023); *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 327–28 (2015). In two related instances, the Supreme Court expressed the CSRA's preclusive effect on claims brought outside the statutory scheme. In *Fausto*, the Supreme Court held that a non-preference member of the excepted service, like Jamerson, could not challenge his suspension in a federal district court. 484 U.S. at 440–41. The Supreme Court explained that Congress designed CSRA as a comprehensive scheme to replace the "haphazard" and "patchwork" system of administrative and judicial review of personnel action that existed before its enactment. *Id.* at 444–45. This system explicitly addressed which excepted-service members had limited or conditional rights to administrative and judicial review. *Id.* at 446–47. By deciding that some members had those rights, the Court reasoned, Congress expressed through its silence that it deliberately denied those rights for the others. *Id.* Allowing those excepted-service members without rights to pursue avenues of review outside of the CSRA scheme would negate its system of preferences and would "seriously undermine" the primacy of the MSPB and Federal Circuit for resolution of disputes over adverse personnel action. *Id.* at 449–50.

Later, in *Elgin v. Department of Treasury*, 567 U.S. 1 (2012), the Supreme Court extended the CSRA's preclusive effect to constitutional claims. *Id.* at 5. There, "covered" employees, who could seek review from the MSPB and Federal Circuit, sued in federal district court, alleging that the statute governing their removals was unconstitutional. *Id.* at 7. The Supreme Court again looked at the purpose of the CSRA—to be an exclusive system for challenging employment actions—and the CSRA's provisions about the covered employees—which established the methods for obtaining review in "painstaking detail." *Id.* at 10–14. This purpose and structure made it "fairly discernible" that the CSRA provided the only avenues for covered employees to challenge adverse employment actions. *Id.* The exclusivity turned "not . . . on the constitutional nature of an employee's claim, but rather on the type of the employee and the challenged employment action." *Id.* at 15. Because the plaintiffs were employees specifically addressed in the statute and based their constitutional claims on removal, the CSRA barred their suit. *Id.* at 23.

Following this analytical framework, the exclusivity of the CSRA to Jamerson's due process claim depends not on its constitutional nature but on whether the CSRA

has addressed his type of employee and the challenged employment action. *Fausto* supports the first factor. The Supreme Court detailed how Congress explicitly dealt with the rights of non-preference members of the excepted service, both in how their rights to review are determined and by how those rights are exercised. *Id.* at 446–47. Importantly, it found that Congress' silence communicated its intent to regulate non-preference members' review rights, rather than finding the silence left a gap that an alternative judicial remedy could fill. *Id.* For the second factor, *Fausto* is instructive again because it dealt with a plaintiff challenging his removal, which was covered by Chapter 75 of the CSRA and thus barred. *Id.* A difference here is that Jamerson frames his claim as a due process violation that caused his removal. *See Elgin*, 567 at 11 n.4 (noting that *Fausto* did not involve a constitutional claim). But an action for reversal of removal framed as a constitutional violation was found precluded by the CSRA in *Paige v. Cisneros*, 91 F.3d 40 (7th Cir. 1996). There, a non-preference member of the excepted service sued for a violation of his Fifth Amendment due process rights. *Id.* at 41–42. The district court remanded to the agency for further review of his discharge, but the Seventh Circuit stated that the district court lacked jurisdiction to do so. *Id.* at 42. The CSRA was the exclusive scheme for adverse employment actions, even if that meant "[m]any personnel actions are unreviewable in any court or administrative tribunal." *Id.* at 42–43. Its withholding of review rights for certain claims did not mean that courts could fashion a separate remedy. *Id.* Along those lines, permitting Jamerson's claim would lead impermissibly to an adjudication of an employment action outside of the framework established by the CSRA.

The Court notes that other circuits have divided over whether a district court retains jurisdiction over a constitutional claim for equitable relief despite the CSRA.[5] Indeed, the Seventh Circuit in *Paige* acknowledged the divergent approaches to constitutional claims that only seek equitable relief. 91 F.3d at 44. While the Seventh

---

[5] *Compare Berrios v. Dep't of Army*, 884 F.2d 28, 30–31 (1st Cir. 1989) (finding that the CSRA precluded the plaintiff's constitutional claims seeking reinstatement, back pay, damages, and attorney's fees), *Dotson v. Griesa*, 398 F.3d 156, 180 (2d Cir. 2005) ("[E]mployees covered by the CSRA . . . may not sue in equity for reinstatement of employment, even when they present constitutional challenges to their termination."), *Zummer v. Sallet*, 37 F.4th 996, 1007–08 (5th Cir. 2022) (affirming dismissal of constitutional claim about adverse employment action that was not reviewable by the MSPB), *Lombardi v. Small Bus. Admin.*, 889 F.2d 959, 961–62 (10th Cir. 1989) (concluding that the CSRA precludes judicial review of agency employment decisions even if the employee's complaint raises constitutional claims and merely seeks injunctive relief), *Stephens v. Dep't of Health & Hum. Servs.*, 901 F.2d 1571, 1576 (11th Cir. 1990) (not permitting additional remedies for alleged constitutional violations beyond what the CSRA has provided), *with Semper v. Gomez*, 747 F.3d 229, 242 (3d Cir. 2014) (holding that a federal employee with no meaningful judicial review may seek equitable and declaratory relief for alleged constitutional violation in a "federal question" action under 28 U.S.C. § 1331), *Strickland v. United States*, 32 F.4th 311, 376–77 (4th Cir. 2022) (same), *Am. Fed. of Gov't Emps. Loc. 1 v. Stone*, 502 F.3d 1027, 1036–39 (9th Cir. 2007) (same), *Spagnola v. Mathis*, 859 F.2d 223, 229–30 (D.C. Cir. 1988) (same).

Circuit has not weighed in, the "doctrinal path hewed by the Supreme Court and [Seventh] [C]ircuit" cuts a broad path for the CSRA to preclude Jamerson's claim. *Ass'n of Admin. L. Judges v. Colvin*, 777 F.3d 402, 406 (7th Cir. 2015) (J., Ripple, concurring). The Seventh Circuit's logic in non-equitable cases also supports this conclusion. In *Paige*, the appellate court addressed the same type of constitutional claim that is presented here and found the claim barred. *Id.* at 42–43. And later, in *Richards v. Kiernan*, 461 F.3d 880 (7th Cir. 2006), the Seventh Circuit held that the CSRA "provides the exclusive remedy for an alleged constitutional violation . . . arising out of federal employment." *Id.* at 885. It reasoned that Congress provided what it considered adequate remedial mechanisms for constitutional violations, even if incomplete and unavailing for some parties. *Id.* at 883–84. Although it decided this in the context of a covered employee asserting a *Bivens* claim, the principle extends to Congress' "deliberate exclusion" of non-preference members of the excepted service from administrative and judicial review. *Fausto*, 484 U.S. at 455. By determining that judicial review was available to certain federal employees and not others, Congress intended to provide adequate constitutional remedies for some and not others, such as Jamerson. The CSRA's exclusivity appeared again in *Colvin*, where the Seventh Circuit found that the CSRA barred a group of administrative law judges who were challenging an agency-imposed quota because the quota fell under the statutory definition of "personnel practices," for which there were statutory remedies. 777 F.3d at 403–04. Even though the statutory remedies for personnel practices were unavailable for the type of practice at issue, the CSRA still foreclosed the plaintiffs' federal suit.[6] *Id.* In the same way, what matters for Jamerson is that the CSRA occupies the field for claims about adverse employment actions, not whether it allows him a statutory route to relief.

Although Jamerson presents his claim as a constitutional one, it is a challenge to agency action that seeks to undo his removal. It is not truly an "independent constitutional claim" that lands outside the CSRA's reach or can be adjudicated as a collateral matter. *Paige*, 91 F.3d at 43–44. Rather, Jamerson proceeds in the same

---

[6] In *Colvin*, the Seventh Circuit considered covered employment actions under special circumstances. The APA provides that an agency cannot assign duties "inconsistent with [their] duties and responsibilities as administrative law judges." 777 F.3d at 403 (citing 5 U.S.C. §§ 554(d)(2), 3105). While the challenged quota created no conflict between the CSRA and APA, the Seventh Circuit refrained from holding that the CSRA barred all agency action impacting decisional independence, in case a serious infraction allowed for a plausible APA claim. *Id.* at 405. It also hypothesized that an administrative law judge could constitutionally challenge an agency action significantly interfering with her decisional independence, because that action would "dangerously diminish[]" her ability to provide due process to claimants. *Id.* Here, Jamerson's claims do not invoke statutory protection that may conflict with the CSRA or demonstrate that his removal creates separate constitutional implications like an action affecting a judge's decision-making. His claims align more closely with those asserted in *Paige* and *Richards* and, like those cases, do not present the unique circumstances that may allow for an exception to the CSRA. *See id.*

9

manner that the plaintiffs did in *Fausto* and *Paige* to overturn their removals. Thus, he runs headfirst into the exclusivity bar of the CSRA. Because Congress substituted the jurisdiction of this Court to hear challenges to adverse employment actions such as Jamerson's, his due process claim must be dismissed for lack of subject matter jurisdiction.

## II.     Jamerson's Remaining Claims (Counts II & III)

Jamerson asserts two other claims about his termination. First, he bases his claim for harmful procedural errors on Section 7701(c)(2)(A) of Title 5 of the United States Code. Second, he claims that OIG violated the Postal Service's internal policy about appropriate employee behavior. These claims are based on the same factual allegations as his due process claim and present alternative causes of action to challenge his removal. However, neither the statute nor policy contains a waiver of sovereign immunity to allow his claims to move forward. Sovereign immunity is treated as a jurisdictional issue, so the Court must dismiss for lack of jurisdiction where it is not waived. *Morgan*, 129 F.4th at 1049–50, 1052.

Even if Defendants were not immune, the Court would still lack jurisdiction because these claims are not colorable. The government argues that neither Section 7701 nor the internal policy creates a private right of action upon which Jamerson can sue, and Jamerson offers no response. Claims that are "'wholly,' 'obviously,' or 'plainly' insubstantial or frivolous" do not provide federal question jurisdiction. *Restoration Risk Retention Grp., Inc. v. Gutierrez*, 880 F.3d 339, 347 (7th Cir. 2018) (citation omitted). Section 7701 governs the appellate procedures for the MSPB "from any action which is appealable to the Board under any law, rule, or regulation." 5 U.S.C. § 7701(a). Section 7701(c)(2)(A) explains that the MSPB cannot sustain the agency's decision if the employee shows harmful error in the application of the agency's procedure. *See Oliva v. Dep't of Vet. Affs.*, 176 F. 4th 650, 661–62 (Fed. Cir. 2026). However, Jamerson concedes that he did not proceed through the MSPB, so there is no MSPB decision here to adjudicate under that standard. Nor can the Postal Service policy provide a cause of action for Jamerson. Agency internal rules have no legal or binding force. *Krasilych v. Holder*, 583 F.3d 962, 966 (7th Cir. 2009). They also do not create a property interest here that could support a due process violation. *Catinella v. County of Cook*, 881 F.3d 514, 518 (7th Cir. 2018) (holding that Fourteenth Amendment due process claim should be dismissed because the employee manual did not create a property interest that could be deprived); *see, e.g.*, *Sharma v. Bd. of Trs. of Univ. of Ill.*, 404 F. Supp. 3d 1183, 1201 (N.D. Ill. 2019) (same). Because the claims lack any foundation for plausibility, they do not provide federal question jurisdiction.[7]

---

[7] Because the Court grants the government's motion to dismiss, it need not address its alternative motion for summary judgment.

## Conclusion

For the reasons stated above, the government's motion to dismiss [33] is granted. Jamerson cannot assert his Fifth Amendment claim against the individual Defendants personally because he only seeks declaratory and equitable relief that they cannot provide. To the extent he claims a due process violation by the individual Defendants in their personal capacities, the Court dismisses with prejudice Count I under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. His constitutional claim against the individual Defendants in their official capacities and OIG must proceed according to the CSRA, which does not provide Jamerson with judicial review in federal district court. Thus, the CSRA precludes this Court's jurisdiction over the remainder of Count I. Counts II and III do not rest upon valid rights of action, so they do not establish federal subject matter jurisdiction. Nor do they provide a waiver of sovereign immunity. Without jurisdiction over the claims, the Court dismisses these remaining claims under Rule 12(b)(1) without prejudice.

**SO ORDERED.**

Dated: July 29, 2026

Sunil R. Harjani
United States District Judge

11